T.C. Summary Opinion 2002-51

UNITED STATES TAX COURT

JAMES JOSEPH TIMMERMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10735-00S.                    Filed May 9, 2002.

James Joseph Timmerman, pro se.

<u>Donald Brachfeld</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1998 in the amount of $20,319, and an accuracy-related penalty under section 6662(a) in the amount of $4,064.

The issues for decision are (1) whether a distribution received by petitioner in 1998 from his deceased brother's profit-sharing plan is includable in petitioner's gross income, and (2) whether petitioner is liable for an accuracy-related penalty for substantial understatement of income under section 6662(a).

The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Jersey City, New Jersey.

Petitioner's brother, Martin Timmerman (Martin), died intestate on March 23, 1997. On October 10, 1997, petitioner was appointed Letters of Administration from the Surrogate's Court of Hudson County, New Jersey, to administer and settle Martin's estate.

Prior to his death, Martin worked for JP Morgan and held a deferred interest in a profit-sharing plan (plan). In a letter dated April 9, 1997, from Gary D. Naylor, Vice President of JP Morgan, petitioner was notified of the monetary balance in the plan and that he was the sole beneficiary of Martin's plan. Attached to the letter were an explanation of payment options

with tax implications and a JP Morgan election form.  Petitioner failed to respond to this correspondence because "I was working to settle my brother's estate. * * * And I made no choice at that time."

At the time of Martin's death, the balance in the plan was $69,473.55.  Martin died at the age of 52 years, prior to the commencement of any distributions from the plan.  Petitioner received a check dated December 23, 1998, from the Chase Manhattan Bank for $70,194.88, reflecting the total net distribution of his brother's plan.[1]  The check was payable to "James J. Timmerman", individually.  On or about February 5, 1999, petitioner contributed the total net distribution from the plan into an account at Charles Schwab & Co. originally titled "Martin C. Timmerman in Trust for James Timmerman".  Petitioner made a second contribution of $7,799.43 on or about February 5, 1999, from his own funds to "keep the account intact".  According to petitioner, Martin opened this account for the benefit of petitioner in 1995, and after the February 5, 1999, contributions, the account was retitled the "James J Timmerman Beneficiary Charles Schwab & Co. Cust Inherited IRA" (Inherited IRA).

At trial, petitioner provided a document entitled "Death

---

[1]    The total gross distribution from the plan was $77,994.31 less $7,799.43 withheld for Federal income tax.

Benefit Election - Nonspousal Beneficiary/The Deferred Profit-Sharing Plan of Morgan Guaranty Trust Company of New York and Affiliated Companies for United States Employees" (election form).  It appears on the face of the election form that petitioner completed, signed, and dated the form October 30, 1998.  Under the "benefit election" paragraph, petitioner checked off the box next to the choice "Annual installments over ____ years, beginning in the year the participant would have attained age ____.  (No younger than 50 or no older than 70 ½.)"  Petitioner left the blanks unanswered.  The election form requested that petitioner return the completed form by December 15, 1998.  It appears, however, that the form was never sent to Morgan Guaranty Trust Company of New York, and, therefore, the election was never in effect.

Petitioner failed to provide at trial any fully executed election forms, mail receipts, or other information to show that an election was made.  According to petitioner, he misplaced a folder of mail receipts and other documents and it could not be retrieved.

Petitioner received a 1998 Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., issued from American Century Services Corp. for JP Morgan, reflecting a gross distribution of $77,994.31 and Federal income tax withheld of $7,799.43.

Petitioner timely filed his 1998 return without reporting the income as reflected on the Form 1099-R, and claimed Federal income tax withheld of $7,799.43. Petitioner received a refund of $7,910.85 for his Federal income tax for 1998.

Respondent issued a notice of deficiency determining that petitioner received income of $77,994.31. The derivation and the computation of the amount reported on Form 1099-R by American Century Services are not in dispute. The only question is whether this amount is includable in petitioner's gross income for 1998.

Petitioner contends that the distribution is not subject to tax because it was a "trustee-to-trustee" or "institution-to-institution" transfer. It appears that petitioner further contends that he received the distribution from Martin's plan as the administrator of the estate, rather than the beneficiary. We disagree with both of petitioner's arguments.

Respondent's determination is presumed correct, and petitioner bears the burden of proving that respondent's determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[2]

---

[2] Because petitioner failed to introduce any credible evidence, he failed to meet the requirements of sec. 7491(a), as amended, so as to place the burden of proof on respondent with respect to any factual issue relevant to ascertaining liability for the tax deficiency in issue. As to the accuracy-related penalty, we find that respondent has satisfied his burden of
(continued...)

Gross income includes all income from whatever source derived.  Sec. 61(a).  Section 61(b) specifically includes items included under section 72 (relating to annuities).

Petitioner does not dispute that he received the money from Martin's plan in 1998.  Petitioner instead argues that the transfer of Martin's plan into the Inherited IRA should not be characterized as a taxable distribution of Martin's plan, but rather a tax exempt "trustee-to-trustee" transfer.

The law is clear.  Section 402(a) generally provides that any amount actually distributed to any distributee by any employees' trust, such as Martin's plan, shall be taxable to the distributee in the taxable year of the distributee in which distributed, under section 72.  Section 402(c) provides that certain amounts paid to an employee from a qualified trust are considered "rollover" distributions, and thus excludable from income.  Under section 402(c)(5), a transfer from a qualified plan to an eligible retirement plan, including an individual retirement account described in section 408(a) or individual retirement annuity described in section 408(b), shall be treated as a rollover contribution described in section 408(d)(3). However, section 408(d)(3)(C) specifically denies the rollover

---

²(...continued)
production under sec. 7491(c) because the record shows that petitioner failed to include the income on his return.  Higbee v. Commissioner, 116 T.C. 438 (2001).

treatment of inherited accounts, including inherited individual retirement accounts or annuities.

Section 402(c)(9) permits rollover treatment to a distribution made to a spouse after the death of the employee. However, the regulations state that such rollover treatment is limited to the spousal beneficiary.[3]  Accordingly, a distribution to a non-spousal beneficiary does not receive rollover treatment, and therefore is taxable to the beneficiary upon receipt of the distribution.

Petitioner is not the employee of the plan or the employee's spouse.  Rather, petitioner is the non-spousal distributee and sole beneficiary of Martin's plan.  Petitioner received the total net distribution of Martin's plan in his individual name. Petitioner then contributed the total amount into the Inherited IRA.  We have no election form or other document reflecting a valid annuity payment election.  Rather, we have petitioner's

---

[3]     Sec. 1.402(c)-2, Q&A-12(b), Income Tax Regs., provides the following:

> Q-12.  How does section 402(c) apply to a distributee who is not an employee?
>
> A-12. (b) Non-spousal distributee.  A distributee other than the employee or the employee's surviving spouse (or a spouse or former spouse who is an alternate payee under a qualified domestic relations order) is not permitted to roll over distributions from a qualified plan.  Therefore, those distributions do not constitute eligible rollover distributions under section 402(c)(4) and are not subject to the 20-percent income tax withholding under section 3405(c).

self-serving statements as our only evidence.  The facts presented before us leave us no other choice but to find that the receipt of the plan's total net distribution is a lump sum distribution from Martin's plan.[4]

Petitioner's final argument is that he received the total distribution of the plan as the personal representative of Martin's estate and not in the capacity of the sole beneficiary. We find no merit in petitioner's argument.  Under New Jersey law, a pension plan, like an insurance policy, is a nontestamentary asset, and therefore generally not subject to administration under a probate estate.  See Czoch v. Freeman, 721 A.2d 1019, 1024 (N.J. Super. Ct. App. Div. 1999).  We find that petitioner received the total plan amount in his individual capacity as the beneficiary and not the personal representative of Martin's estate.

---

[4]    The pertinent part of sec. 402(d)(4)(A) states:

(A)  Lump sum distribution.  For purposes of this section and section 403, the term "lump sum distribution" means the distribution or payment within 1 taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient-

  (i)  on account of the employee's death,

  *    *    *    *    *    *    *
from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 or from a plan described in section 403(a). * * *

Based upon the above, we find that petitioner received a lump sum distribution in his individual name as the beneficiary of Martin's plan.  Accordingly, $77,994.31 is includable in petitioner's gross income.

The last issue for decision is whether petitioner is liable for an accuracy-related penalty pursuant to section 6662(a) for the year in issue.  Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment which is attributable to any substantial understatement of income tax.  Sec. 6662(b)(2).  A "substantial understatement" exists where the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000.  Sec. 6662(d)(1).

No penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment.  Sec. 6664(c).

Petitioner failed to address the accuracy-related penalty and offered no evidence that he had reasonable cause for the underpayment.  Petitioner apparently sought no advice on the matter, and made no argument at trial.  Accordingly, we sustain respondent's determination.

We have considered all arguments made by the parties, and, to the extent not discussed above, conclude they are irrelevant or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.